# APRIL TERM 1881.*

BENJAMIN S. COMPTON v. JAMES BLAIR.

*Accommodation acceptance—Estoppel by casual admission—Indemnity bond.*

A creditor's failure to present promptly a draft drawn in his favor, and accepted for accommodation only, does not release the debtor where the drawee was never supplied with funds to meet it, and the maker suffered no loss by the neglect; especially if after protest the maker recognized his continued liability for the debt.

Casual statements made by the holder of a draft, or on his behalf, to the effect that it has been paid, do not estop the creditor from enforcing its payment if the debtor is not actually misled by them.

A judgment debtor sought to enjoin the collection of the judgment to the amount of a draft which he had given as collateral security, but which the creditor had failed to collect. It had been accepted merely for accommodation and without funds to pay it, and the drawee had afterward failed. The suit for injunction was brought more than seven years after it had gone to protest, and it was decreed that complainant pay the amount found due on the judgment. *Held,* that the objection that defendant should have been required to surrender the draft, or, if it were lost, give an indemnifying bond, had no force, especially if raised for the first time in the appellate court.

Appeal from Monroe. Submitted Apr. 5. Decided Apr. 13.

BILL for injunction. Complainant appeals. Affirmed.

*Grosvenor & Landon* and *John H. Doyle* for complainant. The payee's unreasonable delay to present a draft for payment makes it his own and discharges the debt: Story on Bills §§ 108–9 ; Story on Prom. Notes § 406 ; *Chamber-*

*lyn v. Delarive* 2 Wils. 353; *Ward v. Evans* 2 Ld. Raym. 928; *Dayton v. Trull* 23 Wend. 345; *Brower v. Jones* 3 Johns. 229; *Hays v. McClurg* 4 Watts 454; *Mehelm v. Barnet,* Coxe (N. J.) 87; *Shaw v. Gookin* 7 N. H. 16; *Harris v. Johnston* 3 Cr. 311; an indorser about to take up a protested note is discharged by honest, but mistaken information from the holder that it has been paid, if such information prevents his resorting to the maker: *Kingsley v. Vernon* 4 Sanf. 361; *Gamage v. Hutchins* 23 Me. 567; *Oxford Bank v. Haynes* 8 Pick. 426; *Allan v. Eldred* 50 Wis. 132; 10 Rep. 575.

*Willits & Critchett* and *C. A. Stacy* for defendant.

COOLEY, J. The bill in this case is filed to restrain the collection of the balance alleged to be due on a judgment, rendered in the circuit court for the county of Monroe, in favor of defendant and against the complainant in May, 1872, for the sum of $10,751.03 and costs of suit. The litigation has twice before been in this court. *Compton v. Blair* 27 Mich. 398; *Blair v. Compton* 33 Mich. 414.

The controversy now relates to the application upon the judgment of a certain draft, drawn by Compton, as president of the West Virginia Oil & Oil Land Company, on J. H. Carrington & Co. of New York city, dated July 22, 1873, and drawn at two months for the sum of $3120. Complainant claims that this draft should be applied, and defendant resists the claim.

This draft, it appears, was handed over to the attorneys who had procured the judgment, on the day it bears date, and was by them receipted with other drafts, at the time when an execution was in the sheriff's hands and after a levy had been made. The receipt specifies that "If one or all of these drafts are accepted and paid, they are to apply, so far as paid, in satisfaction of an execution in this cause now in the hands of Philip Nadeau, the late sheriff. If any one of them is not accepted, or if any one of them is not paid at maturity, the plaintiff in this case is at liberty to take such steps as he

may be advised to enforce the collection of the judgment in this cause. It being distinctly understood that these drafts are only collateral security for the payment of the judgment in this cause, and the lien now had by the levy of execution upon the property of the defendant is in no way released or abandoned, but is held to await the acceptance and payment of the above-described drafts."

The draft in question was accepted by the drawees, but when it fell due was protested for non-payment. Question is made in the case whether the drawer was ever notified of the non-payment, but the evidence of notice is satisfactory to our minds. It was subsequently placed in the hands of Judge Joseph Casey, who was principally interested in the judgment, and was by him forwarded to an attorney in New York with instructions to take prompt steps for collection. The instructions were not closely followed, but the record discloses efforts by the attorney to obtain payment without suit, which continued until the spring of 1875, when J. H. Carrington & Co. failed. The reason suit was not brought is now suggested to be, because the attorney had lost the draft, a fact which he did not at the time make known to any of the parties.

If by the failure to collect this draft, Compton or the company which drew it could be loser, there would be some ground for claiming, on the facts so far stated, that the creditor had made it his own. But the evidence is entirely satisfactory that the draft was accepted for the accommodation of the drawer, and that the drawees had no funds with which to meet it, and were never put in funds afterwards. Carrington so testifies, and his evidence is much more full, explicit and satisfactory than that of Compton, who undertakes to dispute him. But it also appears that Compton distinctly recognized his liability for the amount represented by the draft long after it had been protested; that in May following he promised to give good paper in place of it, and that a month later he was endeavoring to procure a renewal. After that time there was never any offer on his part to take it up, and never any new obligation assumed by Blair or

Casey to press it to collection for his benefit, if indeed it was collectible.

It is also claimed by Compton that Blair has estopped himself from now treating this draft as unpaid, by various representations made at different times by his attorneys that the draft had been paid, or that Compton need give himself no further concern on the subject, or other words of similar import. If such statements were made and were relied upon by Compton to his injury he would undoubtedly have an equitable claim to relief. But is clear enough that Compton never supposed this draft had been paid, and never lost anything by reason of statements made by the attorneys, upon which he now relies by way of estoppel. There were undoubtedly statements made at different times by Mr. Norris and Mr. Willits, acting as attorneys in the collection of the judgment, which a stranger to the facts might have understood as Compton now claims they should be; but they were made either while the collection of other drafts was the matter immediately in hand, or at a time when the judgment was apparently satisfied by a sale which was afterwards set aside. Compton was never misled by them, for he knew quite as well as the attorneys did that the draft had never been paid. Casual remarks are not to be made to operate as an estoppel when nobody is misled by them and nobody harmed. *Ferguson v. Millikin* 42 Mich. 441. The only fact Compton can claim not to have known was the loss of the draft; but as he never called for its surrender to him, he cannot claim that the loss affected his action. He might have raised a question upon this fact if he had called for the draft to bring suit; but this he failed to do, and Carrington & Co., who seem to have been more willing to reach an adjustment than he was, instituted suit after a time for a large sum which they claimed the Oil Company owed them.

When the court of chancery adjudged that complainant had no equities, a decree was made that defendant pay the sum found due on the judgment which was computed at $6250. A technical objection is now made to this decree, that the court should have ordered the Carrington draft

delivered up, or, if it was lost, that an indemnifying bond be given by defendant. No doubt such a bond would have been ordered if defendant had been the moving party; but he already had his judgment and Compton had failed to make out a case for restraining its collection. It was not, under such circumstances, a necessary condition to the collection of the judgment that Blair should give a bond of indemnity: the mere dismissal of the bill without further order would have left him at liberty to proceed in the collection of his judgment. As it is now more than seven years since the draft was protested for non-payment, it is not likely any party to it can suffer from its non-production. And as there is nothing in the case to indicate that this point was ever made before, we do not think it entitled to notice now.

The view we take of the facts renders it unnecessary to consider the law points made on behalf of complainant.

The decree must be affirmed with costs.

The other Justices concurred.