BESSENGER *v.* WENZEL.

1. BILLS AND NOTES — NEGOTIABLE INSTRUMENT LAW — PRESENTMENT—NOTICE OF NONPAYMENT—WAIVER.

Presentment, protest, and notice of nonpayment of a negotiable instrument may be waived by indorsers of a corporate note who are the directors of the maker, know that it has no money with which to pay the obligation and so notify the payee immediately prior to maturity of the paper, and negotiate for a renewal of the instrument.

2. SAME—WAIVER.

Indorsers who consent to remain liable on a promissory note after knowledge of failure to make presentment, waive that defense.

Error to Wayne; Donovan, J. Submitted February 15, 1910. (Docket No. 100.) Decided April 1, 1910.

Assumpsit by Frank L. Bessenger against Paul Wenzel and others on a promissory note. A judgment for plaintiff is reviewed by defendants on writ of error. Affirmed.

*Wade Millis* and *May & Dingeman*, for appellants.

*Moore & Moore*, for appellee.

MOORE, J. On September 11, 1907, suit was instituted in this cause by declaration in assumpsit on all the common counts and with a notice attached that the plaintiff would offer in evidence a certain promissory note, in words and figures as follows:

"$2,000.00.            DETROIT, MICH., April 10, 1907.

"Ninety days after date we promise to pay to Frank L. Bessenger, or order, two thousand dollars, at German American Bank.

"Value received, with 6 per cent. interest per annum.
    [Signed]        "MARVEL MOTOR CAR CO.,
        "By W. J. LOOMAN,
                "Secy. & Treas."

Written across the end of the note and on the face thereof: "Engelbert Venderbush." Indorsed on the back of said note: "Paul Wenzel. J. C. Forster. W. J. Looman. Engelbert Venderbush."

The defendant Paul Wenzel pleaded the general issue, with the following notice:

"You will please take notice tnat, upon the trial of the above cause, the defendant Paul Wenzel will give in evidence and insist upon in his defense that, if he signed the instrument set forth in the declaration in this cause, that the same was signed by him as accommodation indorser, without consideration; that neither at the maturity of the said instrument nor within a reasonable time thereafter was notice of the nonpayment of said instrument given to this defendant, nor any demand made upon him for the payment thereof; that since the maturity of said instrument the Marvel Motor Car Company, the maker of the said note, has become insolvent, and bankruptcy proceedings have been instituted against said company—all of which facts this defendant will claim has released and discharged him from liability as indorser as aforesaid."

The defendants Venderbush and Looman pleaded the general issue, with the following notice:

"You will please take notice that on the trial of this cause the said defendants William J. Looman and Engelbert Venderbush will give in evidence under the general issue, above pleaded, and insist in their defense, that no notice of protest for nonpayment of said note has been given these defendants; and at no time have said defendants been served with a notice of protest for nonpayment of the instrument set forth in plaintiff's declaration, and his bill of particulars, and no notice of nonpayment of the same by the makers thereof has been given to or served upon said defendants in the manner required by the statutes of the State of Michigan, and the law merchant thereof."

The case was tried before a jury. Plaintiff obtained judgment for the amount of the note. The case is brought here by writ of error.

The plaintiff admitted that he did not present the note at the bank the day it became due. The parties to this

suit were all stockholders in the Marvel Motor Car Company. It is the claim of plaintiff that several days before the note matured it was talked between the parties to this litigation that the maker of the note would be unable to pay it when it matured, and that it would have to be renewed; that they all knew upon the day of its maturity that there was no money in the bank with which to pay the note, and that at no time upon the day of its maturity was there as much as $90 in the bank, and that the maker of the note had no way to get funds there to pay it. It is his further claim that it was agreed by the indorsers who were also directors in the Marvel Motor Car Company, on the day the note matured, that it should be renewed; that upon the following day $30 as interest was paid to him; and that he was then assured by the defendants that the note he had was just as good as though it was renewed. He gave testimony tending to establish his claim.

Mr. Munz testified, in part:

"*Q.* Let us see what transpired at the meeting. Did Mr. Bessenger come in and have his note with him, do you know, that evening?
"*A.* I did not see him show it."

Witness continues:

"He said he wanted $200, and that he was willing if they gave him $200 to extend the payment of the other $1,800. Whoever were present said they could not pay the $200, but they would give him a renewal note for the total sum. I think that was agreed to by Mr. Bessenger. I think he agreed to come down the next day and have the new note made out by Miss Burley, the bookkeeper, for the full sum and get his interest."

On the part of the defendant, while it was admitted there was less than $90 in the bank when the note matured, it is denied that defendants agreed to renew the note either before or after its maturity, or that they did anything by which its presentment was waived, or that the indorsers assured plaintiff at the time the $30 of inter-

est was paid that the note was as good as a renewal would be. We quote from the brief of appellants sufficient to show their contention:

"We have quoted from the testimony at length, because we believe that the plaintiff has failed to prove by clear and unequivocal evidence such facts as would be sufficient to constitute a waiver, and because it must be apparent from the plaintiff's own testimony that the minds of the parties never met either with reference to a renewal or with reference to any agreement on the part of the indorsers relative to a continuation of their liability on the note in question. * * * Conceding that the facts as detailed by the plaintiff are true, one of the most important elements of an implied waiver is lacking. We have seen that the doctrine of implied waiver is closely associated with that of estoppel, and, unless the plaintiff was induced before or on the day of maturity by some act or language on the part of defendants from making presentment, his claim must fail. * * * Under his own testimony, the statements which plaintiff relies upon as constituting waiver were not made until the time for presentment had passed, and the important element of estoppel is lacking. * * *

"It affirmatively appears from plaintiff's testimony that defendants expected that he would take the necessary steps to protect himself. He says they were 'surprised' and 'relieved' on the 10th, when he told them he had not protested it. This testimony also indicates that defendants did not act with full knowledge of the facts—an important essential of the plaintiff's case. * * *

"Conceding, for the purposes of the argument, that the claim of waiver made by the plaintiff was a question of fact for the jury, we submit that the case was not fairly presented by the trial judge. Defendants requested the court to charge the jury as follows:

"'I charge you, gentlemen of the jury, that the promissory note sued upon in this action was upon its face made payable at the German American Bank of this city, and that it was incumbent upon the plaintiff to present said note for payment at such bank during banking hours, unless the maker thereof did not have funds at such bank with which to meet the note during that day, in which case presentment at any hour before the bank closed on that day is sufficient, but that presentment of such note at such bank, unless waived by the defendants, was absolutely necessary at some

time during the day on which it matured, and that if you find that the plaintiff failed to so present it, and that it was not waived, then your verdict should be for the defendants.'"

This request was refused. The court instructed the jury:

(1) If there was no money in the bank with which to pay the note, and the holder, maker, and indorsers knew that fact, presentment for payment was not necessary.

(2) If the holder, maker, and indorser agreed before or at maturity that the note should not be paid, but renewed, then there was no necessity for presenting it for payment.

(3) If the defendants, with full knowledge that there had been no presentment, assented to continue their liability, then they would be liable.

Was the judge right in giving these instructions? If so, the case should be affirmed. If not, it should be reversed.

Section 84 of the negotiable instruments law (Act No. 265, Pub. Acts 1905) provides that presentment for payment may be dispensed with by waiver of presentment, express or implied.

In *Quaintance* v. *Goodrow*, 16 Mont. 376 (41 Pac. 76), Pemberton, C. J., speaking for the court, said:

"The testimony of the witnesses is to the effect that the defendant King, at divers times after the maturity of the note, promised to pay it. He asked not to be pressed, and promised that, as soon as he could get the money, or arrange it, he would pay the note. He promised to pay it on the last day of grace, and asked not to be pressed. We think the evidence amply supports the findings of the court in respect to this contention. Daniel, in his work on Negotiable Instruments (4th Ed.), § 1090, says:

"'When presentment of the bill or note at maturity has been dispensed with by prior agreement between the parties, or, in other words, has been waived by the party entitled to require it, the holder is excused for his failure to make it. It would be a fraud upon the holder to permit him to suffer by acting upon the assurance of the party to whom he looks as security upon the paper; and, as a prompt presentment is a requirement solely for the benefit of the drawer and indorsers, they are themselves the

161 MICH.—5.

sole judges to determine whether or not they will enforce it.  The waiver may be either verbally or in writing.  It may be expressed *in totidem verbis,* or inferred from the words or acts of the parties.  And it matters not what particular language may be used, so that it conveys the idea that the presentment at maturity is dispensed with.  The like observations apply to the protest and notice.'

"It is not necessary that the waiver should be direct and positive.  2 Daniel on Negotiable Instruments (4th Ed.), § 1091.  See sections 1090–1108, inclusive, for a general discussion of the doctrine of waiver.  In *Yeager* v. *Farwell,* 13 Wall. (U. S.) 6, a case involving the question of waiver, the court say:

"'The indorser can, by his own conduct, place himself in such a position that he is estopped from alleging want of demand and notice of nonpayment.  Although, accurately speaking, there can only be a waiver of demand and notice by the indorser before the note is due, yet, after it is due, he can waive proof of them, or, what is more to the purpose, he can so act towards the holder of the note as to render the fact that demand was not made or notice given wholly immaterial.'

"In *Gove* v. *Vining,* 7 Metc. (Mass.) 212 (39 Am. Dec. 770), a case almost identical in its facts with the case at bar, Mr. Chief Justice Shaw says:

"'And the court are of opinion that when an indorser, at or shortly before the time when the note becomes due, says to the holder that an arrangement for its payment is about being made, and in direct terms, or by reasonable implication, requests the holder to wait, or give time, it amounts to an assurance that the note will be paid—that the promisor or indorser will pay it—and is a waiver of demand and notice.  It tends to put the holder off his guard, and induces him to forego making a demand at the proper time and place; and it would be contrary to good faith to set up such demand and notice—caused perhaps by such forbearance—as a ground of defense.'

"See, also, authorities cited.  *Markland* v. *McDaniel,* 51 Kan. 350 (32 Pac. 1114, 20 L. R. A. 96); *Sheldon* v. *Horton,* 53 Barb. (N. Y.) 23.  We are of the opinion that the defendant King, by his conduct and frequent promises to pay the note, waived demand and notice of nonpayment thereof."

In *Re Swift,* 106 Fed. 65, a case under a statute having the exact words found in our statute, the court said:

"The second exception insisted upon is that found in section 82 [Stat. Mass. 1898, chap. 533]: '(3) By waiver of presentment, express or implied.' No express waiver is here shown, and the case turns upon the existence or absence of waiver implied from the facts agreed by the parties and stated by the referee. Stat. Mass. 1898 is intended to supersede all other statutes relating to promissory notes, and, as it does not purport merely to rearrange statutes previously existing, there is no strong presumption that any one of its provisions is merely a codification of the law previously existing. When it attaches certain results to an implied waiver of demand, however, a court called upon to define such waiver may appropriately look at definitions of the term previously established. When the legislature of Massachusetts used the words, 'waiver of presentment, express or implied,' it may be supposed to have used these words in the meaning consistently attributed to them by the courts of Massachusetts. In *Kent* v. *Warner*, 12 Allen (Mass.), 561, 563, Mr. Justice Foster said, in delivering the opinion of the supreme court:

"'Strictly speaking, a waiver is an intentional relinquishment of a known right; but, where the indorser of a note by words or acts has in fact misled and put the holder off his guard and reasonably induced him to omit due presentment for payment and notice of nonpayment, he is deemed in law to have waived the performance of these ceremonies, because it would be inconsistent with good faith on his part to insist upon a condition, compliance with which had been prevented by his own conduct.'

"That which puts the holder off his guard is said to be waiver, in other cases, among them *Gordon* v. *Parmelee*, 15 Gray (Mass.), 413, 422; *Armstrong* v. *Chadwick*, 127 Mass. 156.

"Do the facts stated in the referee's certificate establish that the holder of the note was reasonably put off his guard by the acts of Hodges? I think they do. Hodges was liable on the note both as maker and indorser. About a week before maturity he consulted with the holder regarding a general assignment of the firm and its partners, which assignment was made as a result of the consultation. The note was discussed, and Hodges told the holder that neither the firm which made the note, nor he himself, the partner who had indorsed it, could pay it at maturity. It is not necessary to decide that, where the maker and indorser of a note are quite separate per-

sons, the bare statement by the indorser that the maker will not pay operates to excuse demand. Here the maker and indorser were, in an important sense, the same person. Hodges said, in effect, ' I cannot pay you this note either as maker or as indorser.' Doubtless he might have added, ' In spite of the fact just stated, I require you to go through the useless ceremony of demanding payment.' Had he said this, there would have been no waiver; but, in the absence of such a reservation, I think that the holder reasonably understood him to waive the useless ceremony. Upon this understanding the holder acted. It should be noticed that Hodges and his creditor were not dealing at arm's length, or as opposing parties, but were conferring about the general condition of Hodges' affairs.

" In construing a term found in a statute of Massachusetts and previously defined in Massachusetts decisions, it may be sufficient to refer to these decisions. As the statute in question is intended to introduce uniformity into the laws of the several States, it would be unfortunate, however, if the Massachusetts decisions concerning waiver of demand were opposed to a great weight of authority elsewhere, and to the law merchant as generally laid down. I do not find that opposition exists. The definitions in 2 Daniel on Negotiable Instruments (4th Ed.), § 1103, and in 2 Parsons on Notes & Bills (2d Ed.), p. 582, are similar to those declared by the supreme court of Massachusetts. In *Cayuga County Bank* v. *Dill*, 5 Hill (N. Y.), 403, no waiver of demand was understood by the creditor at the time the alleged waiver took place. It was set up as an afterthought to excuse a mistake concerning the date of the note. When the holder was asked by the indorser why the note had not been presented for payment, he answered that presentment would be made that same afternoon, and claimed a waiver only after he had found out, to his surprise, that this presentment would be too late. In *Re Grant*, Fed. Cas. No. 5,691, the court found that the waiver, so far as there was one, was not made with any regard to the indorsement, and that all parties were considering only the rights of the maker. In the case at bar the indorsement was expressly referred to. I hold, therefore, that there was no implied waiver of presentment, within the purview of the statute.

" That waiver of presentment for payment, and knowledge of nonpayment arising from the identity of the

maker and indorser, taken together, will excuse notice of nonpayment, is a conclusion so sensible that it must stand unless plainly opposed to the words of the statute. That this is the law merchant is not denied. To present for payment in order to charge an indorser, where the indorser has already told the holder that he cannot pay the note either as maker or indorser, seems a useless ceremony; but it is a matter of substantial importance, by comparison with giving notice to the indorser who has waived presentment, that he (the indorser) has not paid the note as maker. The notice, if given, would run substantially thus:

" ' Please take notice that you have not paid the note which, in accordance with our agreement, I have not presented to you, for payment.'

"The facts which were held to constitute a waiver of demand were held also to constitute a waiver of notice in most or all the cases above cited. Waiver of notice seems to have been implied from waiver of presentment.

"That notice would be excused by waiver even in the absence of an express provision of statute, I am inclined to think; but this case seems fairly covered by the statute itself. By section 115 notice of dishonor is not required ' where the indorser is the person to whom the instrument is presented for payment.' The instrument here was not presented to Hodges for payment, because he had given the creditor to understand that presentment would be useless. The exception was inserted to avoid the necessity of giving notice of a fact which, by the terms of the exception, must be within the personal knowledge of the man notified."

See *Taunton Bank* v. *Richardson*, 5 Pick. (Mass.) 436.

In 2 Daniel on Negotiable Instruments (5th Ed.), § 1103, it is said:

"Any act, course of conduct, or language of the drawer or indorser calculated to induce the holder not to make demand or protest or give notice, or to put him off his guard, or any agreement by the parties to that effect, will dispense with the necessity of taking these steps, as against any party so dealing with the holder. And even though a statute requires the waiver of demand and notice, to be valid, must be in writing, it has been held

that the course of conduct of the indorser may be such as will estop him from denying that the note was duly protested.    Where the party told the holder 18 months before maturity not to protest it, as it should be paid at maturity, it was held a waiver of demand and notice.    So where the indorser informed the holder that the maker had absconded, and requested forbearance.    So where, on the first day of grace, the indorser requests time, and says that an arrangement will be made, notice is waived; so where the drawer or the indorser informs the holder that the bill will not be paid, or that he cannot pay it when due, it is a waiver of demand, protest, and notice."

See, also, *Valley Nat. Bank of Lebanon* v. *Urich,* 191 Pa. 556 (43 Atl. 354); *First Nat. Bank of Iowa City* v. *Ryerson,* 23 Iowa, 508.

In 4 Am. & Eng. Enc. Law (2d Ed.), p. 463, it is said:

"Effect of promise to pay made after maturity.—It is a well settled doctrine both in England and in the United States that if the drawer or indorser, with full knowledge of the neglect of the holder to exercise due diligence, promises to pay the bill or note, or in any way unequivocally assents to continue his liability as though due diligence had been used, he is held to have waived the consequence of the laches, and will stand in the same position as if he had been regularly charged by presentment, demand, and notice."

See, under this head, *Parsons* v. *Dickinson,* 23 Mich. 56, and the many cases cited in the note.    *Compton* v. *Blair,* 46 Mich. 1 (8 N. W. 533); *Union Bank of Georgetown* v. *Magruder,* 7 Pet. (U. S.) 287; *Hunter & Keller* v. *Hook,* 64 Barb. (N. Y.) 468.

In 1 Morse on Banks & Banking (4th Ed.), p. 502, occurs the following language:

"(6) Any express or implied waiver of demand or notice is an excuse, as if the drawer or an indorser agrees to waive notice, or so acts as to induce the holder to believe that he waives it, and so estops himself, it is an excuse as to such drawer or indorser.

"(7) A promise to pay or acknowledgment of liability by drawer or indorser after maturity, and with knowledge that proper demand and notice have not been given, is a

waiver.  And a part payment after maturity is such an
acknowledgment.  Part payment of a check before ma-
turity is a waiver of demand and notice.

"(8) If the drawer have no reasonable expectation that
the bill will be honored, or that he will be able to secure
funds to meet it, it is not necessary, as against him, to
present or notify; but as against innocent indorsers the
usual formalities are necessary.  A declaration by the
drawer that the paper will not be honored excuses pre-
sentment and notice.  So, if the drawer of a check have
no funds, or insufficient funds, or withdraws his deposit,
or orders the bank not to pay the check, no presentment
and notice is necessary as to him—he can suffer no loss by
its absence—but as to an indorser such facts are no excuse,
unless he knew of the drawer's fraud, and so participated
in it."

It has been repeatedly held, as to the drawer of a check,
that, if he had no funds in the bank to meet the check had
it been presented in proper time, no harm is done him if
the check was not presented.  *Carson, Pirie, Scott &
Co.* v. *Fincher,* 129 Mich. 687 (89 N. W. 570, 95 Am.
St. Rep. 449).  In the same case, reported in 138 Mich.
666 (101 N. W. 844), Justice HOOKER, speaking for the
court, said:

"Authorities are numerous that delay in presentment
and failure to give notice of dishonor cannot be success-
fully interposed as a  defense in an action against the
drawer, when it can be said that the drawer had no
funds in bank, and had no expectation that the check
could be paid."

In *First Nat. Bank of Detroit* v. *Currie,* 147 Mich.
72 (110 N. W. 499, 9 L. R. A. [N. S.] 698, 118 Am. St.
Rep. 537), McALVAY, C. J., speaking for the court, said:

"The fact that there are no funds in the account
against which the check is drawn does not relieve the
holder from presentment and notice of dishonor to the in-
dorser, unless it appears that the indorser knew it.  2
Daniel on Negotiable Instruments (5th Ed.), § 1596; 1
Morse on Banks & Banking (4th Ed.), § 262, subd. 8."

In the case at bar the note was made payable to Frank

L. Bessenger or order. It was never indorsed by him; it was made payable at a bank. It was made by a corporation and was indorsed before its delivery to the payee by the defendants who were directors of the corporation and in its active management. Prior to Act No. 265, Pub. Acts 1905, these indorsers would have been held as joint makers by a long line of our decisions commencing with *Wetherwax* v. *Paine*, 2 Mich. 555. These cases are collected in Bunker on Negotiable Instruments, p. 120. Whether they would be so liable now we express no opinion. As we have already seen, that act recognizes that presentment and notice may be waived.

It is the claim of the plaintiff that not only did the corporation know that it had no funds in the bank with which to pay the note, but that the indorsers knew of this fact and had assured him that the note could not be paid at maturity. To have presented this note would have been an idle ceremony. If plaintiff's version is to be believed—and the jury evidently did believe it—neither the corporation nor the indorsers expected the note to be presented.

We think, under the circumstances of this case, that the charge of the court is not error.

Judgment is affirmed.

HOOKER, McALVAY, BROOKE, and STONE, JJ., concurred.