NNDJ, INC., Mary Eghigian, Janet Terterian, Amy Dluzynski, and Ezgar Villarreal, Plaintiffs,

v.

NATIONAL CITY BANK, Comerica Incorporated, JPMorgan Chase Bank, N.A., and Fifth Third Bancorp, d/b/a Fifth Third Bank, Defendants.

Civil No. 07–14406.

United States District Court, E.D. Michigan, Southern Division.

March 21, 2008.

Mark K. Wasvary, Becker and Wasvary, Troy, MI, for Plaintiff.

Joseph A. Fink, Dickinson Wright, Lansing, MI, Kathleen A. Lang, Dickinson Wright, Detroit, MI, Keith A. Noreika, Covington, Burling, Washington, D.C., Henry Stancato, Simon, Galasso, Troy, MI, Michael G. Brady, Pamela M. Miller, Warner, Norcross, Southfield, MI, Molly E. McManus, Warner, Norcross, Grand Rapids, MI, for Defendant.

## ORDER GRANTING THE NATIONAL BANKS' MOTION TO DISMISS

JOHN FEIKENS, District Judge.

Plaintiffs NNDJ, Inc., Mary Eghigian, Janet Terterian, Amy Dluzynski, and Ezgar Villarreal (collectively "Plaintiffs") filed this class action law suit against National City Bank, Comerica Incorporated, JPMorgan Chase Bank, N.A.("JPMorgan Chase") and Fifth Thirds Bank (collectively the "Banks") alleging that the Banks violate the UCC, as enacted in Michigan, by issuing official checks and subsequently charging non-accountholders a fee to cash them. Defendants National City Bank and JPMorgan Chase (collectively the "National Banks") have brought a motion to dismiss under FRCP 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, I GRANT the National Banks' motion to dismiss.

### FACTUAL AND PROCEDURAL BACKGROUND

National City Bank and JPMorgan Chase are federally chartered national banks created under and governed by the National Bank Act, 12 U.S.C. § 21 *et seq.* ("NBA"). The National Banks issue "official checks" in the form of cashier's checks or teller's checks. A cashier's check is "a draft with respect to which the drawer and the drawee are the same bank or branches of the same bank." UCC § 3–104(g). A teller's check is "a draft drawn by a bank (I) on another bank, or (ii) payable at or through a bank." UCC § 3–104(h). The

National Banks charge non-accountholder customers a fee to cash official checks that the National Banks themselves have issued. The fee generally ranges from five to ten dollars.

Plaintiffs have filed this class action lawsuit alleging that the Banks violate UCC §§ 3–412, 3–413, and 3–414, as adopted in Michigan,[1] by issuing official checks and subsequently charging non-accountholders a fee to cash them. The National Banks have filed a FRCP 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. They base their motion on alternative grounds. First, the National Banks argue that the sections of the UCC in question do not prohibit banks from charging non-accountholders a fee to cash official checks. In the alternative, the National Banks argue that if sections of the UCC are interpreted to prohibit the National Banks from charging non-accountholders a fee to cash official checks, those state law provisions are preempted by the NBA.

## ANALYSIS

### A. Motion to Dismiss Under Rule 12(b)(6)

Pursuant to Fed.R.Civ.P. 12(b)(6), a party defending a claim may bring a motion to dismiss for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, the party bringing the claim must plead factual allegations that "raise a right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, —— U.S. ——, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007) (internal citations and quotation marks omitted). If the party bringing the claim does not plead factual allegations that if proven would raise a right to relief

above the speculative level, dismissal is proper. See *Id.*

### B. The National Banks' Grounds for Dismissal

In deciding the National Banks' motion, I am presented with two matters of first impression. The first is whether UCC §§ 3–412, 3–413, or 3–414 prohibit banks from issuing official checks and subsequently charging non-accountholders a fee to cash them. The second poses a related question: if UCC §§ 3–412, 3–413, or 3–414 are interpreted to prohibit the National Banks from charging non-accountholders a fee to cash official checks, are those state law provisions preempted by the NBA. I will consider the preemption question first.

#### 1. Perception of State Law by the National Bank Act

#### a. Federal Preemption

"A fundamental principle of the Constitution is that Congress has the power to preempt state law." *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000). A congressional act preempts state law if the act contains an express preemption provision, if Congress intends for the act to occupy a field exclusively, or if the act comes into direct conflict with state law. See *Sprietsma v. Mercury Marine, a Div. Of Brunswick Corp.*, 537 U.S. 51, 64, 123 S.Ct. 518, 154 L.Ed.2d 466 (2002). Conflict preemption occurs when "it is it is impossible for a private party to comply with both state and federal requirements or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 64–65, 123 S.Ct. 518. (quotations and

---

1. UCC §§ 3–412, 3–413, and 3–414 as adopted by the state of Michigan appear at MCL §§ 440.3412, 440.3413, 440.3414.

citations omitted). The National Banks argue that if sections of the UCC, as adopted in Michigan, are interpreted to prohibit National Banks from charging non-accountholders a fee to cash official checks, those sections come into direct conflict with powers granted to the National Banks by the NBA.

### b. The National Bank Act

"In 1864, Congress enacted the NBA, establishing the system of national banking that is still in place today." *Watters v. Wachovia Bank, N.A.,* —— U.S. ——, 127 S.Ct. 1559, 1566, 167 L.Ed.2d 389 (2007). The NBA grants national banks a list of enumerated powers as well as "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24(Seventh). Under the NBA, the Office of the Comptroller of the Currency ("OCC") "bears primary responsibility for the surveillance of the business of banking as authorized by § 24 Seventh." *NationsBank of North Carolina, N.A. v. Variable Annuity Life Ins. Co.,* 513 U.S. 251, 257, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995) (citation omitted). In fulfilling this responsibility, the OCC has issued a regulation addressing a national bank's authority to charge fees. "A national bank may charge its customers non-interest charges and fees, including deposit account service charges." 12 C.F.R. § 7.4002(a). The OCC has clarified the meaning of this regulation by issuing an interpretive letter explaining that the term "customer" as used in 12 C.F.R. § 7.4002(a) "simply means any party that receives a product or service from the bank." Comptroller of the Currency, Interpretive Letter # 934, p. 2 n. 5 (Docket Entry # 33, Response to Motion, Exhibit # 2). The National Banks claim that 12 U.S.C. § 24(Seventh) and 12 C.F.R. § 7.4002(a), grant them the authority to charge non-accountholder customers fees for cashing official checks.

### c. The OCC Letters

The Supreme Court has stated that the OCC's construction of the NBA should be given great weight. "It is settled that courts should give great weight to any reasonable construction of a regulatory statute adopted by the agency charged with the enforcement of that statute. The Comptroller of the Currency is charged with the enforcement of banking laws to an extent that warrants the invocation of this principle with respect to his deliberate conclusions as to the meaning of these laws." *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.,* 513 U.S. 251, 256–57, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995) (quoting *Clarke v. Sec. Indus. Ass'n,* 479 U.S. 388, 403–04, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987)).

Shortly before the hearing on this motion, Counsel for JPMorgan Chase wrote to the OCC requesting "confirmation ... that JPMorgan Chase N.A. is authorized pursuant to 12 U.S.C. § 24(Seventh) and 12 C.F.R. § 7.4002 to establish and charge a fee to a non-accountholder customer for the service of cashing an official check." The OCC responded in a letter dated February 27, 2008. "Based on our review of your letter and supporting materials and the relevant considerations set forth in our regulations, we confirm that the Bank may establish and charge an official check cashing fee to a non-accountholder customer pursuant to Section 24(Seventh) and section 7.4002." Letter from the Comptroller of the Currency, February 27, 2008, p. 1 (Docket Entry # 39). In addition, the OCC noted "that the authority of the Bank to charge particular fees is not conditioned on obtaining an individual confirmation opinion from the OCC; national banks are authorized to charge non-interest fees and charges as an inherent element of their authority to conduct the business of banking." *Id.* at p. 1, n. 1.

On February 28, 2008, Plaintiffs' Counsel wrote the OCC. The OCC responded with a letter dated February 29, 2008. In the letter, the OCC specifically addressed Plaintiffs' Counsel's claim that the OCC letter dated February 27, 2008 was not official. "First, the statement made in your letter and incorrectly attributed to me—that the OCC's letter opining on the authority of a national bank to charge a fee for cashing certain checks is "not official"—is wrong. The letter is a formal legal opinion of the OCC's most senior legal officer." Letter from the Comptroller of the Currency, February 29, 2008, p. 1 (Docket Entry # 41, Exhibit 1).

#### d. Conclusion

The NBA grants national banks the powers necessary to carry on the business of banking. 12 U.S.C. § 24(Seventh). The OCC has reasonably interpreted this grant of powers to include the authority of national banks to charge their customers fees. 12 C.F.R. § 7.4002(a); see *Nations-Bank*, 513 U.S. at 256–57, 115 S.Ct. 810; *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–845, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). I find, therefore, that the National Banks' practice of charging non-accountholder customers a fee to cash official checks is an exercise of the authority granted to national banks by the NBA. In the OCC's letter, dated February 27, 2008, the OCC's most senior legal officer reached the same conclusion. Letter from the Comptroller of the Currency, February 27, 2008, p. 1 (Docket Entry # 39).

Because the NBA grants the National Banks the authority to charge non-accountholder customers a fee to cash official checks, state laws that prohibit them from doing so stand as an obstacle to the accomplishment of Congress's objectives and are, therefore, preempted. See *Sprietsma*, 537 U.S. at 64, 123 S.Ct. 518. For these reasons, I hold that if UCC §§ 3–412, 3–413, and 3–414, as adopted in Michigan, are interpreted to prohibit the National Banks from charging non-accountholder customers a fee to cash official checks, they are preempted by the NBA.

If UCC §§ 3–412, 3–413, and 3–414 are interpreted to allow the National Banks to charge non-accountholder customers a fee to cash official checks, Plaintiffs' factual allegations do not raise a right to relief. If UCC §§ 3–412, 3–413, or 3–414 are interpreted to prohibit the National Banks from charging non-accountholder customers a fee to cash official checks, those sections are preempted by the NBA, and Plaintiffs' factual allegations do not raise a right to relief. I, therefore, find that regardless of how UCC §§ 3–412, 3–413, and 3–414 are interpreted, Plaintiffs have not stated a claim upon which relief can be granted.

#### 2. Interpretation of UCC §§ 3–412, 3–413, and 3–414

Because dismissal is appropriate on preemption grounds, I need not decide at this time whether UCC §§ 3–412, 3–413, or 3–414 prohibit banks from charging a fee to cash official checks.

### CONCLUSION

For the reasons set forth above, I find that Plaintiffs have failed to state a claim upon which relief can be granted. Accordingly, I grant the National Banks' motion to dismiss.

**IT IS SO ORDERED.**