RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0101p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

JULIET M. MURPHY,

　　　　　*Plaintiff-Appellant,*

　　　　　　　　　*v.*

NATIONAL CITY BANK,

　　　　　*Defendant-Appellee.*

No. 08-1483

————————————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-14292—John Feikens, District Judge.

Argued: January 16, 2009

Decided and Filed: March 17, 2009

Before: MERRITT, ROGERS, and WHITE, Circuit Judges.

————————————

**COUNSEL**

**ARGUED:** Carl G. Becker, BECKER & WASVARY, Troy, Michigan, for Appellant. Keith A. Noreika, COVINGTON & BURLING, Washington, D.C., for Appellee. **ON BRIEF:** Carl G. Becker, Mark K. Wasvary, BECKER & WASVARY, Troy, Michigan, for Appellant. Keith A. Noreika, Fuad Rana, COVINGTON & BURLING, Washington, D.C., Kathleen A. Lang, DICKINSON WRIGHT, Detroit, Michigan, Joseph A. Fink, DICKINSON WRIGHT, Lansing, Michigan, for Appellee.

————————————

**OPINION**

————————————

　　　　WHITE, Circuit Judge. Plaintiff Juliet M. Murphy filed this putative class action, alleging that Defendant National City Bank's practice of charging fees as a condition of cashing official checks violated Michigan's Uniform Commercial Code (MUCC), M.C.L.

1

440.3412, 440.3413, and 440.3414.[1] The district court granted Defendant's motion to dismiss on pre-emption grounds, and did not reach the MUCC issue. We affirm for the reasons the district court set forth in a companion case, i.e., that the MUCC is not violated by a bank charging a non-accountholder a fee to cash its teller's check. *See NNDJ, Inc. v. Comerica, Inc.*, 584 F. Supp. 2d 957 (E.D. Mich. 2008).[2]

I

Defendant National City Bank (National City) is a national banking association subject to the National Banking Act (NBA), 12 U.S.C. § 21 *et seq.* Plaintiff was the named payee on an official check of National City dated October 5, 2007. Plaintiff, who did not have an account at National City, presented the check for payment at a National City branch in Berkley, Michigan, and was charged a ten-dollar fee for the service of cashing the check.

On October 16, 2007, additional plaintiffs represented by the same counsel filed a similar action against National City, JP Morgan Chase Bank, and several regional or state banks, including Comerica and Fifth Third Bank, asserting identical claims under the MUCC. *See NNDJ, Inc.*, *supra*, 584 F. Supp. 2d 957. The *NNDJ* case was transferred to the same district court judge who presided over the instant case.

National City and JP Morgan Chase (the national bank defendants) filed motions to dismiss in both the instant case and in *NNDJ* under Fed. R. Civ. P. 12(b)(6) (failure to state a claim), arguing that nothing in the MUCC prohibited a bank from assessing a check-cashing fee on an official check and that, to the extent the MUCC was interpreted to preclude a national bank from so doing, such an interpretation is pre-empted by the NBA, 12 U.S.C. § 24(Seventh), and Office of the Comptroller of the Currency (OCC)

---

[1] Because the district court's jurisdiction was based on diversity of citizenship, 28 U.S.C. § 1332, Michigan law applies unless pre-empted.

[2] Defendant argued in its supplemental authority letter that the district court's ruling in the companion case, *NNDJ, Inc., supra*, supports that the MUCC is not violated by the imposition of a check-cashing fee on non-accountholders presenting a teller's check for payment.

regulations implementing the Act, 12 C.F.R. § 7.4002.[3] The district court granted the national banks' motions to dismiss on pre-emption grounds, its order stating "[f]or the reasons set forth in my order granting the National Banks' Motion to Dismiss in *NNDJ Inc. v. National City Bank*, Case no. 07-14406, I find that if sections of the UCC, as enacted in Michigan, are interpreted to prohibit National City from charging non-accountholder customers a fee to cash official checks, those state law provisions are preempted by the NBA." Order granting Motion to Dismiss, entered March 21, 2008, case no. 2:07-cv-14292 (E.D. Mich.), *see also NNDJ, Inc. v. Nat'l City Bank,* 540 F. Supp.2d 851 (E.D. Mich. 2008). The district court did not reach the question whether Defendant's charging a fee for cashing an official check presented by a non-accountholder violated the MUCC. This appeal ensued. Subsequently, the district court held in the companion case, *NNDJ, Inc., supra*, under the same facts presented herein, that Comerica's charging a fee for cashing teller's checks did not violate the MUCC.

II

The MUCC[4] defines "Drawer" as "a person who signs or is identified in a draft as a person ordering payment." M.C.L. 440.3103(1)(c). "Drawee" is defined as "a person ordered in a draft to make payment." M.C.L. 440.3103(1)(b). "Remitter" is defined as "a person who purchases an instrument from its issuer if the instrument is payable to an identified person other than the purchaser." M.C.L. 440.3103(1)(k). The

---

[3] National banks may exercise "all such incidental powers . . . to carry on the business of banking . . . [including the power to negotiate] drafts," i.e., to cash checks. 12 U.S.C. § 24 (Seventh). The NBA generally gives the Office of the Comptroller of the Currency (OCC) exclusive regulatory, supervisory, and enforcement authority regarding national banks' provision of banking services, including charges for those services. *See* 12 U.S.C. § 24 (Seventh), 484(a). OCC regulations provide that "establishment of non-interest charges and fees, [and] their amounts . . . are business decisions to be made by each bank, in its discretion," provided that certain factors are considered. 12 C.F.R. § 7.4002(b)(2).

A national bank may "charge its customers non-interest charges and fees" for its authorized services. 12 C.F.R. § 7.4002(a). The OCC interprets the term "customer" as used in § 7.4002(a) to mean "any party that obtains a product or service from the bank." Two federal courts of appeals have upheld the OCC's interpretation of the term "customer" as including non-accountholders. *See Wells Fargo Texas, N.A. v. James*, 321 F.3d 488, 490, 495 (5th Cir. 2003) (noting that district court did not err in deferring to OCC's construction of "customer" in § 7.4002(a) as meaning anyone who presents a check for payment), and *Bank of America v. City and County of San Francisco,* 309 F.3d 551, 563 (9th Cir. 2002) (noting that OCC's construction of incidental powers of national banks as encompassing provision of ATM services to non-depositors at a charge was reasonable and thus entitled to great weight).

[4] The provisions of the MUCC that are at issue are the same or similar to those of the UCC.

MUCC defines "Teller's check" as "a draft drawn by a bank on another bank, or payable at or through a bank." M.C.L. 440.3104(8). A "Cashier's check" is defined as "a draft with respect to which the drawer and drawee are the same bank or branches of the same bank." M.C.L. 440.3104(7). The MUCC, M.C.L. 440.3409(1), defines "acceptance" as

> the drawee's signed agreement to pay a draft as presented. It must be written on the draft and may consist of the drawee's signature alone. Acceptance may be made at any time and becomes effective when notification pursuant to instructions is given or the accepted draft is delivered for the purpose of giving rights on the acceptance to any person.

The National City official check in the instant case stated that it was drawn on Citibank, N.A. Plaintiff's response to Defendant's motion to dismiss admitted that Defendant issued "Teller's checks" rather than "Cashier's checks," and conceded that two of the three provisions of the MUCC on which her claims were based, M.C.L. 440.3412 and 440.3413, were thus inapplicable.

The remaining MUCC provision is M.C.L. 440.3414, which provides in pertinent part:

> Obligation of drawer
>
> Sec. 3414. (1) This section does not apply to cashier's checks or other drafts drawn on the drawer.
>
> (2) If an unaccepted draft is dishonored, the drawer is obliged to pay the draft (*i*) according to its terms at the time it was issued or, if not issued, at the time it first came into possession of a holder, or (*ii*) if the drawer signed an incomplete instrument, according to its terms when completed, to the extent stated in sections 3115 and 3407. The obligation is owed to a person entitled to enforce the draft or to an endorser who paid the draft under section 3415.[5]

Under M.C.L. 440.3502(2)(b), "dishonor" of a "draft payable on demand," requires "presentment for payment . . . *to the drawee*." [Emphasis added.]

---

[5]UCC 3-414(a) and (b) are the same as M.C.L. 440.3414(1) and (2), with the exception of the spelling of "endorser." UCC 3-414(b) spells the word "indorser."

III

In the companion case, *NNDJ, Inc., supra*, the district court concluded that Comerica did not violate UCC §§ 3-412, 3-413, or 3-414, as adopted in Michigan (i.e., M.C.L. 440.3412, 440.3413, and 440.3414), by charging a non-accountholder a fee for cashing a teller's check:

> UCC § 3-412 applies only to cashier's checks or notes, neither of which is at issue here. . . .  In this case, the check was not drawn on the drawer, but on a different bank.  Therefore, Comerica cannot be liable under UCC § 3-412.
>
> * * *
>
> UCC § 3-413 is titled "Obligation of Acceptor."  However, by definition, Comerica cannot be an acceptor as the drawer on the check.  UCC § 3-103 defines acceptor as a "drawee who has accepted a draft."  In this instance, Comerica is the drawer, not the drawee.  Therefore, Comerica cannot be held liable under UCC § 3-413.
>
> * * *
>
> The instant case involves a teller's check, where Comerica is the drawer and not the drawee.  Since Comerica is the drawer, its liability is secondary to the drawee of the check, in this case, Citibank.  According to White & Summers:
>
>> The drawer of a draft drawn on another bank or other third party is only secondarily liable on the instrument, that is the holder must make an attempt to collect elsewhere before the drawer must pay . . . .  Thus, in common experience the holder of a check looks first to the bank for payment, and if it cannot be had there, to the drawer.
>
> 2 White & Summers, Uniform Commercial Code § 16-6 (5th ed.).
>
> Section 3-414 of the UCC is entitled "Obligation of a Drawer." According to UCC § 3-414(b), if an unaccepted draft is dishonored, "the drawer is obliged to pay the draft (i) according to its terms at the time it was issued."  Dishonor occurs where a draft is payable on demand and "presentment for payment is duly made to the drawee and the draft is not paid on the date of presentment."  UCC § 3-502(b)(2).  Here presentment for payment was not made to the drawee; therefore the requirement of dishonor under UCC § 3-502(b) has not been met.

Despite the fact that Plaintiff did not present the check to the drawee for payment, the check may still be considered dishonored if Comerica waived presentment. Dishonor occurs without presentment if presentment is excused and the instrument is not duly accepted or paid. UCC § 3-502(e). Presentment is excused if the drawer waives it. UCC § 3-504(a)(iv). Therefore, in order to determine whether Comerica is liable on its tellers [sic] check, this Court must determine whether Comerica waived presentment. If it waived presentment, then the requirement of dishonor has been met, making Comerica liable on the check.

Comerica's acceptance of the check did not constitute a waiver of presentment. "Waiver of presentment and notice of dishonor will not be implied from doubtful acts or language." *Kramer v. Stryker,* 274 Mich. 179, 182, 264 N.W. 618 (1936). There was clearly no express waiver here. There was no writing on the instrument or otherwise that indicated a waiver, nor was there any oral agreement by Comerica to waive presentment to Citibank. Because there was no express waiver, any waiver of presentment would have to be implied from Comerica's conduct.

When Ms. Dluzynski went to Comerica to cash the check, Comerica did not tell her that the check was drawn on Citibank nor did it tell her that she should present the check to Citibank for payment. Plaintiffs argue that this constitutes a waiver of presentment. However, this is not a clear waiver by conduct. Comerica indicated to Ms. Dluzynski that it charged $5.00 to cash the check for a non-customer. This could just as easily be seen as a statement that it had no obligation to pay the check yet and would only do so for an additional fee because it was providing a service that it was not obliged to provide. Since Comerica's actions do not amount to a clear waiver, I hold that Comerica did not waive notice of presentment and was therefore not obligated to pay the check until the drawee, Citibank, had dishonored it.

584 F.Supp. 2d 957, 960-61.[6]

The district court's analysis is equally applicable here. Because the check was a teller's check, National City's only obligation was to pay the check if dishonored. Only Citibank, the drawee bank, could have dishonored the check. Plaintiff does not claim she presented the check to Citibank for payment. Therefore, the check was not dishonored.

---

[6]During the pendency of the instant case, the district court in this companion case denied the plaintiffs' motion for reconsideration of its grant of summary judgment to the defendant Comerica.

Plaintiff also asserts that National City did not pay the teller's check according to its terms. M.C.L. 440.3414(2) provides that if an unaccepted draft is dishonored, "the drawer is obliged to pay the draft (*i*) according to its terms at the time it was issued." National City had no obligation to pay the check according to its terms because the check was not dishonored.

Plaintiff argues that the district court erred in relying on *Kramer v. Stryker,* 274 Mich. 179, 182, 264 N.W. 618 (1936), rather than *Bessenger v. Wenzel*, 161 Mich. 61, 125 N.W. 750 (1910), in concluding that Comerica did not waive presentment and dishonor by cashing the check. We agree with the district court's decision on rehearing in *NNDJ* that Comerica's or National City's cashing a teller's check and retaining the check-cashing fee does not constitute partial payment on the check and waiver of presentment to the drawee. *Bessenger*, and the cases discussed therein, found that presentment was excused by conduct of the drawer or endorser that led the holder to believe that presentment would not be required. No such conduct is involved in charging a check-cashing fee.

Appellate courts may affirm on alternative grounds supported by the record. *In re Cardizem CD Antitrust Litigation*, 481 F.3d 355 (6th Cir. 2007). We AFFIRM the district court's grant of Defendant's motion to dismiss on the alternative grounds set forth in *NNDJ, Inc., supra*, 584 F. Supp. 2d at 961, which held that M.C.L. 440.3412, 440.3413, and 440.3414 are not violated by a bank charging a check-cashing fee to a non-accountholder who presents a teller's check for immediate payment. We do not reach the pre-emption issue because it is unnecessary to do so.