NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0415n.06

No. 23-3918

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Oct 22, 2024
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| ROMMIE PERRY, JR., | ) |
| Defendant-Appellant. | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

Before: GRIFFIN, KETHLEDGE, and BUSH, Circuit Judges.

KETHLEDGE, Circuit Judge. Rommie Perry, Jr. appeals the district court's denial of his motions to suppress evidence obtained during a traffic stop. We affirm.

On July 11, 2021, Perry fired over a dozen shots into the ceiling at the Elks Lodge in Alliance, Ohio. Police investigators identified Perry from a surveillance video and obtained an arrest warrant on July 16. They also obtained two search warrants for cellphone-location and call-history data from the cellphone number Perry had historically used to call his parole officer. But neither helped locate Perry, who had apparently stopped using the subject phone. With the help of Perry's parole officer, however, investigators learned that Perry was using a new phone number. They then obtained a warrant for call-detail records and real-time location data from that new number.

Detectives used real-time location data from Perry's new phone to track him to Boardman Township, Ohio. Detective Michael Jones had grown up in Boardman and identified two motels

where Perry was likely to stay. The Police set up surveillance at the Boardman Inn, where Jones spotted Perry as he exited the motel, got into a Ford Taurus, and left. Jones followed the car and called for backup. Eventually, an officer from a neighboring jurisdiction, Officer James Conrad, stopped the car, and Alliance officers quickly arrived and arrested Perry. Alliance Lieutenant Don Wensel searched Perry and found a loaded handgun, which led to this prosecution.

Perry moved to suppress the gun by challenging the validity of the stop and (through a supplemental motion) the validity of the three search warrants. The district court denied Perry's supplemental motion concerning the warrants but scheduled an evidentiary hearing regarding the traffic stop. Jones, Wensel, and Conrad testified. Based on their testimony, the court held that the stop was lawful, and denied Perry's motion to suppress the gun. Perry pled guilty to unlawful possession of a firearm in violation of 18 U.S.C. § 922(g), but reserved his right to appeal the court's suppression rulings. The court sentenced him to 57 months in prison. This appeal followed.

We review the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Fletcher*, 978 F.3d 1009, 1014 (6th Cir. 2020).

Perry first challenges the validity of the search warrants for call and location data from his two cellphones. Law-enforcement officers generally need a warrant to conduct a "search" that intrudes upon a person's reasonable expectation of privacy. *See Katz v. United States*, 389 U.S. 347, 353 (1967). But a person does not have a reasonable expectation of privacy in his location while moving in public or "in the real-time location data that their cellular telephones transmit." *United States v. Rios*, 830 F.3d 403, 428–29 (6th Cir. 2016); *United States v. Skinner*, 690 F.3d 772, 777 (6th Cir. 2012). Thus, the officers' use of Perry's real-time location data was not a Fourth Amendment search, and so they did not need a warrant to obtain it. And for the same reason, we

need not address the validity of those warrants to hold that the district court rightly denied Perry's supplemental motion to suppress. *See Murphy v. Nat'l City Bank*, 560 F.3d 530, 535 (6th Cir. 2009).

Perry also argues that the traffic stop was unlawful. Police may stop a vehicle based on a reasonable suspicion that a person inside the vehicle is the subject of an arrest warrant. *See United States v. Hensley*, 469 U.S. 221, 227–29 (1985). When one officer has reasonable suspicion but relies on another officer to execute the stop, courts "impute collective knowledge among multiple law enforcement agencies, even when the evidence demonstrates that the responding officer was wholly unaware of the specific facts that established reasonable suspicion for the stop." *United States v. Lyons*, 687 F.3d 754, 766 (6th Cir. 2012). In these situations, the investigating officer "must have facts supporting the level of suspicion required" to execute the stop, and the responding officer "must act in objective reliance on the information received." *Id.* at 767.

Detective Jones, the investigating officer, testified that the Alliance Police had an active warrant to arrest Perry. He also testified that he recognized Perry at the hotel, watched him get into the Taurus, and knew that Perry was still in the vehicle when the Canfield police arrived to execute the stop. Thus, Jones had reasonable suspicion to justify stopping the car himself. *See id.* Canfield Officer Conrad, the responding officer, testified that he stopped the car based solely on information relayed to him through the local dispatcher—including the description of the vehicle, license plate number, location and direction of travel, and that one of the occupants had an active warrant and might be armed. After Conrad spotted the car, he verified the information with the dispatcher and executed the stop. Conrad testified that he did not know that Perry was in the car or even who Perry was at the time of the stop. Nor did he witness a traffic violation to justify the stop. Rather, he stopped the car in "objective reliance on the information received." *See id.*

Perry argues that Conrad lacked reasonable suspicion because he did not independently verify the factual basis for the stop or speak with Alliance officers directly.  But officers are not "expected to cross-examine their fellow officers about the foundation of transmitted information," so Conrad had no duty to verify the basis for the stop.  *Id.* at 766.  Nor did Conrad need to speak directly with Alliance officers beforehand.  *Id.*  Thus, Conrad reasonably relied on the information from his dispatcher, and the stop was lawful.

The district court's judgment is affirmed.